## WONG LIM v. NAGLE, Commissioner of Immigration.

Circuit Court of Appeals, Ninth Circuit. January 14, 1929.

No. 5552.

George A. McGowan, of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and Geo. M. Naus, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge. On July 8, 1927, the appellant arrived at the port of San Francisco, and made application to enter the United States as the foreign-born son of Wong Fook Guey, alias Wong Yuk Yen, a native-born American citizen. For want of proof of the alleged relationship and the American citizenship of the alleged father, the application was denied by a Board of Special Inquiry, and, on appeal, the board's decision was affirmed. The appellant assigns error to the denial of his petition for habeas corpus in which he had alleged, in substance, that the Board of Special Inquiry discredited evidence which conclusively proved his right to admission, and that the rejection of his application was abuse of the authority committed to the board, and that he was denied a fair hearing.

In his testimony before the board, the appellant stated that his father's names were

Wong Fook Guey and Wong Yuk Yen, and that he died August 8, 1920, at Sacramento, Cal. On the appellant's behalf, there was introduced in evidence a mortuary record of the state showing that on August 7, 1920, one Toy Wong died at Sacramento, also a typewritten receipt which bore no date, but which bore the signature, both in English and Chinese, of Wong Quan, an alleged brother of the appellant, reciting the receipt by him from the administrator of the estate of Toy Wong of the sum of $356.97 in full payment of his distributive share of the estate. In that receipt various aliases were attributed to the decedent, Toy Wong, as Ah Toy, Wong Fook Guey, Wong Yoke Yin, Wong Yuk Hin. The paper does not purport to be a portion of the original records of the administration of the estate, nor is it a certified copy, and no explanation is furnished as to how it came into the possession of Wong Quan, witness for the appellant. If it was an original record, it should have borne a date and a filing mark, and Wong Quan had no right to its possession. If introduced as a copy, it should have been certified as such, and should not have borne the original signatures of Wong Quan. And no reason is apparent why in the body of the receipt there should have been inserted the various names attributed by the witnesses to the decedent, unless the purpose was to construct evidence for the identification of Toy Wong as the father of the appellant. No evidence from the probate records was offered to show that either Wong·Quan or the appellant was listed as a son or heir of Toy Wong. It is not surprising that the receipt was regarded with distrust by the Board of Special Inquiry. It seems to have been conceded that Toy Wong was born in the United States, but the appellant, on his first examination before the board, and obviously before he had had an opportunity to confer with his alleged brothers and others who appeared to testify on his behalf, testified positively that his father was born in China, and that he was later naturalized as an American citizen. When asked how he knew it, he said, "I knew it, why should anyone have to tell me?" And he added that his mother told him—that she told him that his father was born in China and came to the United States and became a citizen there. If the appellant's testimony was true, it follows that either Toy Wong was not his father, or that Toy Wong was fraudulently admitted to the United States as American born. The board was also influenced by a number of discrepancies in the testimony. It is unnecessary to refer to more than one of them. Toy Wong's remains were taken to China for burial. The appellant testified that he had visited his father's grave in China, and that it was marked by a slab of granite standing upright, about a foot high, and placed at the foot of the grave. Thereafter, one of his alleged nephews having testified that the grave was not marked in any manner, the appellant, on being recalled, testified that there was no headstone on his father's grave, and, when his attention was directed to his former testimony, he said, "I was mistaken when I said that. I forgot about it."

We are unable to see that the appellant was denied a fair hearing, or that there was abuse of authority in rejecting his application, or absence of evidence to sustain the finding of the Board of Special Inquiry.

The judgment is affirmed.